# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT RANCOURT,<br><br>Plaintiff,<br><br>v.<br><br>MEREDITH CORPORATION,<br><br>Defendant. | Civil Action No. 1:22-cv-10696-DPW<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I. THIS COURT LACKS PERSONAL JURISDICTION OVER MEREDITH .................. 1

II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VPPA OR THE MVPA .................................................................................................................. 5

A. The VPPA Does Not Apply to Recipe Clips ....................................................... 5

B. Plaintiff Fails to Allege a Disclosure of "Specific Video Materials or Services" or that Any Such Disclosure Was "Knowing" ..................................... 7

C. The Ordinary Course of Business Exception Applies .......................................... 9

D. Plaintiff Fails to Allege a Violation of the MVPA ............................................. 10

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. Dash*,
2020 WL 6806433 (D. Mass. 2020) ....................1

*Carreras v. PMG Collins, LLC*,
660 F.3d 549 (1st Cir. 2020) ....................3

*Chen v. U.S. Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020) ....................1, 2, 3, 4

*Conopco, Inc. v. Rebel Smuggling, LLC*,
2021 WL 5909831 (E.D. Va. Dec. 14, 2021) ....................2, 4

*Daniel v. Cantrell*,
375 F.3d 377 (6th Cir. 2004) ....................9

*Doffing v. Meta Platforms, Inc.*,
2022 WL 3357698 (D. Or. July 20, 2022) ....................1, 2

*Foisie v. Worcester Polytechnic Inst.*,
967 F.3d 27 (1st Cir. 2020) ....................10

*FTC v. Amazon.com, Inc.*,
2015 WL 11256312 (W.D. Wash. Aug. 3, 2015) ....................8

*Gonzalez v. Cent. Elec. Coop. Inc.*,
2009 WL 3415235 (D. Or. Oct. 15, 2009) ....................7

*Gutierrez v. Wemagine.AI LLP*,
2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ....................1, 4

*Hasbro Inc. v. Clue Computing Inc.*,
994 F. Supp. 34 (D. Mass. 1997) ....................3

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ....................6

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................8, 9

*Johnson v. Blue Nile, Inc.*,
2021 WL 3602214 (N.D. Cal. Aug. 13, 2021) ....................2

*K.O. v. Sessions*,
436 F. Supp. 3d 442 (D. Mass. 2020) ....................1

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Loomis v. Slendertone Distribution, Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) ....................2

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
2021 WL 4733784 (C.D. Cal. June 7, 2021) ....................3

*Motus, LLC v. CarData Consultants Inc.*,
520 F. Supp. 3d 87 (D. Mass. 2021) ....................1, 3, 5

*Plixer International, Inc. v. Scrutinizer GmbH*,
905 F.3d 1 (1st Cir. 2018) ....................2

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ....................2

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995) ....................1

*Senne v. Vill. of Palatine, Ill.*,
695 F. 3d 597 (7th Cir. 2012) ....................9

*Solta Med., Inc. v. Lumenis, Inc.*,
454 F. Supp. 3d 107 (D. Mass. 2020) ....................1

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ....................10

*Stomp, Inc. v. NeatO, LLC*,
61 F. Supp. 2d 1074 (C.D. Cal. 1999) ....................3

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ....................2

*Velasquez v. Bost. Hous. Auth.*,
2018 WL 3912360 (D. Mass. Aug. 14, 2018) ....................4, 8

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................6, 7, 8

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ....................7, 8

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Statutes**

18 U.S.C.
§ 2710(a)(4) ....................5, 6
§ 2710(b)(2)(D)(ii)....................7, 9
§2710(b)(2)(E) ....................9

Mass. Gen. Laws ch. 93 § 106(2) ....................10

**Other Authorities**

47 C.F.R.
§ 73.671....................6
§ 79.4(a)(1) ....................6
§ 79.4(b)(1) ....................6
§ 621(a) ....................6

Merriam-Webster.com (last visited Sept. 30, 2022), https://www.merriam-webster.com/ ....................9, 10

Fed. R. Civ. P. 4(k)(2)....................2

S. Rep. 100-599....................7, 9

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER MEREDITH[1]

Plaintiff fails to plead this Court has either general or specific jurisdiction over Meredith. Mot. 6–12. Ignoring the Motion's authorities, the Opposition posits a new theory of specific jurisdiction, relying on mostly out-of-circuit cases and allegations unpled in the Complaint.

**First,** Plaintiff abandons general jurisdiction and now bases specific jurisdiction on Meredith's generalized "collection of data from [Massachusetts] residents." Opp. 4. But Plaintiff concedes this data collection is the same for all users no matter where they are located. Mot. 10; Compl. ¶ 21. In such cases, courts reject specific jurisdiction, *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022), because otherwise a website or app would be subject to personal jurisdiction everywhere a user is located. "[J]urisdiction cannot be [so] carted from state to state[.]" *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 62 (1st Cir. 2020).[2]

To support his novel theory of specific jurisdiction everywhere, Plaintiff cites several inapposite, out-of-circuit decisions, including *Doffing v. Meta Platforms, Inc.*, 2022 WL 3357698, at *4 (D. Or. July 20, 2022) (R&R), which found personal jurisdiction because the defendant "sent thousands of text messages and emails to [plaintiff] in Oregon, and likely sends thousands of similar communications to its other Oregon users." Plaintiff alleges no such purposeful forum-

---

[1] This brief addresses new legal theories raised for the first time in Plaintiff's Opposition (ECF No. 28 ("Opp.")), which are not supported by the Complaint and further underscore the Complaint's fatal legal and factual deficiencies. Unless otherwise stated, capitalized terms have the same meaning as in Meredith's opening brief ("Motion" or "Mot."). ECF No. 24.

[2] Contrary to Plaintiff's assertion, Opp. 8–9, the presumption against specific personal jurisdiction in every state is properly analyzed under the purposeful availment prong, not the reasonableness prong. *E.g., Chen*, 956 F.3d at 61; *Gutierrez*, 2022 WL 252704, at *2–3. "Reasonableness" is not a catch-all for practical considerations; it is a discrete set of "gestalt" factors that "come into play only if the first two segments of the test for specific jurisdiction have been fulfilled" by a plaintiff. *Brown v. Dash*, 2020 WL 6806433, at *12 (D. Mass. 2020) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995)). The plaintiff "ultimately ha[s] the burden of persuading this Court that the exercise of jurisdiction is proper, *K.O. v. Sessions*, 436 F. Supp. 3d 442, 450 (D. Mass. 2020), and "bears the burden of proof on all three elements" of specific jurisdiction, *Solta Med., Inc. v. Lumenis, Inc.*, 454 F. Supp. 3d 107, 114 (D. Mass. 2020). Because "[a]n affirmative finding as to all three is required before a court can exercise specific jurisdiction," *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 91 (D. Mass. 2021), Plaintiff's failure to plead and prove purposeful availment alone "eliminates the need [] to reach the issue of reasonableness," *Brown*, 2020 WL 6806433, at *12; *e.g., Chen*, 956 F.3d at 62 (absent purposeful availment of Massachusetts, "[w]e need go no further").

directed communications here, and *Doffing* pointedly did not find personal jurisdiction based on general data collection in "every forum where Snapchat is used." *Id.* Unlike *Doffing*, this case does not involve "contracts with thousands of [forum state] residents." *Id.* The Complaint does not allege that Plaintiff agreed to (or is bound by) Allrecipes' terms of service.

The decision in *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353–54 (4th Cir. 2020) (cited in Opp. 4), also turned on targeted advertising ***to*** the forum, not data collection ***in*** the forum. *See also Conopco, Inc. v. Rebel Smuggling, LLC*, 2021 WL 5909831, at *4 (E.D. Va. Dec. 14, 2021) (observing that, in *UMG*, "the defendant's targeted advertising into the Commonwealth, not the data collection from website visitors, constituted purposeful availment. . . .").[3] Rather than reading these cases fairly—as basing jurisdiction on tailored advertising into the forum to specifically induce forum residents to use a product or service, not on standard back-end data collection—Plaintiff distorts their holdings.

Plaintiff's attempt to rely on First Circuit law fares no better. *Plixer International, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 10 (1st Cir. 2018), does not hold that targeted advertising based on data collection creates personal jurisdiction in any specific state, Opp. 4, but instead concerns whether ***foreign*** defendants could be haled into ***any*** U.S. district court under Rule 4(k)(2). *See also S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *2 (N.D. Cal. May 15, 2019) (same). Tellingly, the First Circuit later found *Plixer* of little use on the "novel question" of whether a provider of a "highly interactive" website had purposefully availed itself of Massachusetts without specifically targeting its residents to use the website or deriving substantial revenue from them. *Chen*, 956 F.3d at 60. In *Chen*, the court required a specific temporal and geographic nexus to assert jurisdiction: the

[3] Neither *Johnson v. Blue Nile, Inc.*, 2021 WL 3602214, at *1 (N.D. Cal. Aug. 13, 2021), nor *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1068–69 (S.D. Cal. 2019), Opp. 5, concern data collection in the forum or generalized advertising campaigns.

interactions between website and user, including the collection of revenue or email communications, must have occurred with the provider's knowledge that the user was in Massachusetts. *Id.* at 61. And this Court's decision in *Hasbro Inc. v. Clue Computing Inc.*, 994 F. Supp. 34, 45 (D. Mass. 1997) (cited in Opp. 4–5), relied on the outmoded and no longer controlling "interactivity" test. Because "virtually every website today is at least moderately interactive, the analysis has changed." *Motus*, 520 F. Supp. 3d at 92 (internal quotations omitted); *see Chen*, 956 F.3d at 59.[4]

**Second,** Plaintiff alleges jurisdiction is proper because Meredith "knows it is targeting Massachusetts residents," based on its collection of "the geolocation of Allrecipes users" ***after*** they install the app and choose to enable location services. Opp. 5–6; *see* Compl. ¶ 13. This misapprehends the law. Purposeful availment is a "rough quid pro quo triggered *only* when defendant deliberately targets its behavior toward [the] forum" in the first place, while already "*knowing* that [plaintiff] was located in the forum." *Chen*, 956 F.3d at 61–62 (emphasis added) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2020)). A defendant's ability to discover its users' locations *after* the fact does not mean the defendant targeted Massachusetts residents at the time of the conduct in question. *Id.* Furthermore, the Complaint concedes that "consumers can download the Allrecipes App" from anywhere in the country, Compl. ¶ 13, and far from requiring users to enable location services as a quid pro quo to install the app, "once downloaded, Allrecipes requests permission from users to access their location." *Id.* As the Complaint recognizes, Meredith does not know where potential users are when they install the app. Plaintiff simply does not meet the deliberate targeting standard.

[4] *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999), is likewise "over 20 years old, and more recent Ninth Circuit cases not[e] that 'a plaintiff must also show that the website directly target[ed] the forum'" to establish specific jurisdiction, *MGA Ent., Inc. v. Cabo Concepts Ltd.*, 2021 WL 4733784, at *5 n.4 (C.D. Cal. June 7, 2021) (citations omitted).

**Third,** Plaintiff protests that, unlike the plaintiffs in *Chen* and *Gutierrez*, he has "alleged both intentional targeting and substantial revenue. . . ." Opp. 7. These allegations appear nowhere in the Complaint, which "may not be amended by the briefs in opposition to a motion to dismiss," *Velasquez v. Bost. Hous. Auth.*, 2018 WL 3912360, at *2 (D. Mass. Aug. 14, 2018). As to targeting, Plaintiff argues for the first time in Opposition that Meredith "uses the PII" to "analyze . . . how many Massachusetts users access the App, what features of the App were accessed by Massachusetts residents," (citing Compl. ¶¶ 51, 55–60), and to target "specific groups (*e.g.*, Massachusetts-based users)." Opp. 6. Yet nothing in these paragraphs of the Complaint alleges that Meredith used PII to target geographic subgroups, much less a Massachusetts subgroup, or that it analyzes Allrecipes' use by Massachusetts residents. *E.g.*, Compl. ¶ 51 (detailing Twilio's "Personas" feature); ¶ 57 (detailing advertising tailored to purchase frequency and favorite color, not geographic location). The Law Declaration establishes that Allrecipes does not target ads to geographic subgroups and runs only national campaigns. Mot. 9; Law Decl. ¶¶ 12–14.

As to "substantial revenue," Plaintiff distorts the Law Declaration, which states that only three percent of Dinner Spinner's users are based in Massachusetts. Law Decl. ¶ 16. From this unremarkable percentage, Plaintiff opines that Meredith derived "substantial revenue" from the Commonwealth. Opp. 9. Having a userbase consistent with state population distributions does not demonstrate Meredith's specific cultivation of Massachusetts. Mot. 8. *E.g.*, *Conopco*, 2021 WL 5909831, at *4 (that only 3.11% of website's users were from Virginia "meaningfully" undercut specific jurisdiction). Further, Plaintiff must allege "*knowing* receipt of substantial revenue *from forum residents*." *Chen*, 956 F.3d at 60 (emphasis added). *Post hoc*, litigation-driven analysis of Allrecipes' userbase is irrelevant to whether Meredith knew it was drawing outsized profits from Massachusetts and therefore expected to face suit here. *Id.* at 61 (defendant must know plaintiff's

"whereabouts at the relevant times" of the wrongdoing, not after the "filing of his complaint").

**Fourth,** Plaintiff asks for jurisdictional discovery, which is available only to a plaintiff who has made a "colorable claim" for personal jurisdiction and has already "present[ed] facts to the court which show why jurisdiction would be found if discovery were permitted." *Motus*, 520 F. Supp. 3d at 94 (denying jurisdictional discovery). Plaintiff does not meet this standard or explain what he hopes to learn from jurisdictional discovery. Opp. 10–11.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE VPPA OR THE MVPA

### A. The VPPA Does Not Apply to Recipe Clips

Plaintiff urges the Court to ignore the VPPA's limiting language to create a statute broader than the one Congress passed, which would cover any video content whatsoever. The Court should reject this invitation to usurp Congress's role. The VPPA's text clearly expresses Congress's intent to limit its scope to "prerecorded video cassette tapes ***or*** similar audio visual materials." 18 U.S.C. § 2710(a)(4) (emphasis added). The use of "or" means the only "audio visual materials" covered by the VPPA are those "similar" to the "prerecorded video cassette tapes" available in 1988: movies. Plaintiff disputes this commonsense reading with two meritless arguments.

**First**, Plaintiff wrongly suggests that this text-based interpretation of the VPPA would require a content-based comparison to the films Judge Bork rented. Opp. 17–18. This is a red herring. Meredith never argued that the VPPA's application turns on the content of the video—be it a comedy, romance, mystery, documentary, or arthouse film. The limitation in scope is Congress's category-based restriction where the kinds of "audio visual materials" similar to those available on videocassette in the 1980s are covered by the law but short video clips are not. *Id.* at 15–17. Thus, the VPPA covers the feature film "The Godfather" whether sold or rented as a VHS tape or as a "similar audio visual material[]" like a DVD or streaming video. But it does not cover a two-minute recipe clip for spaghetti sauce, a category of video content that did not exist in 1988.

Nor does the First Amendment undermine (or have any relevance to) the VPPA. Applying the VPPA to the type of video content—feature-length films—that the law was designed to reach does not implicate the First Amendment because the content of the video does not matter. The VPPA applies equally to films on any topic; it simply does not protect short video snippets. That Congress and federal agencies frequently regulate video materials based on aspects of their format, including length, without impacting substance, affirms that such a constraint has no constitutional dimension. *E.g.*, 47 C.F.R. § 79.4(a)(1) (2021); *id.* § 79.4(b)(1) (defining "video programming" as "[p]rogramming provided by, or generally considered comparable to programming provided by, a television broadcast station, but not including consumer-generated media" and requiring closed captions for such programming when distributed online); *id.* § 73.671(c)–(d) (requiring TV broadcast licensees to show at least three hours of child-directed programming of "at least 30 minutes in length" between certain hours); *id.* § 621(a) (instructing the FCC to adopt rules regulating the volume of TV commercials on some platforms but not TV programs).

**Second**, Plaintiff wrongly contends that the VPPA's requirement that a video tape service provider ("VTSP") be "engaged in the business . . . [of providing] prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), does not limit what "similar audio visual materials" are covered. Opp. 15 (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) and *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *5–6 (N.D. Cal. Aug. 10, 2012) ("*Hulu I*")). In fact, the "audio visual materials" in both *Hulu I* and *In re Vizio* were films and TV series, that is, *similar* materials to the prerecorded video cassette tapes the statute explicitly regulates. *See Hulu I*, at *2 ("The programs include news, entertainment, educational, and general interest programs."); *In re Vizio, Inc.*, 238 F. Supp. 3d at 1212 ("Vizio markets its Smart TVs as a 'passport to a world of entertainment, movies, TV shows and more.'"). These cases

do not hold that all video content is covered by the VPPA, and they comport with the view that Congress only intended to regulate content similar to that which could be rented in 1988.

**B. Plaintiff Fails to Allege a Disclosure of "Specific Video Materials or Services" or that Any Such Disclosure Was "Knowing"**

Ignoring the VPPA's definition of PII, Mot. 17–18, Plaintiff argues, without precedent or support, that simply disclosing the *subject matter* of a video would violate the statute. Opp. 18. This argument fails for several reasons. First, the Complaint does not allege that Allrecipes discloses the subject matter of videos to Twilio. Compl. ¶ 45 (alleging transmission of "a user's geolocation, AAID, and member ID, [and] 'recipe ID,'" but not recipe subject matter). Second, the VPPA's definition of PII makes no mention of subject matter; it defines PII as "information which identifies a person as having requested or obtained *specific* video materials or services" from a VTSP. Mot. 17. Plaintiff's "subject matter" argument rests on a snippet of legislative history unrelated to the definition of PII, S. Rep. 100-599, at 13–14, regarding a limited statutory exception that allows a VTSP to disclose the "subject matter of such materials" for direct marketing. 18 U.S.C. § 2710(b)(2)(D)(ii). Reading this provision in light of the full statutory scheme clarifies that the VPPA applies to a narrow range of specific audio visual material a person watches, *id.*, not mere subject matter. *See* Mot. 18–20; *Gonzalez v. Cent. Elec. Coop. Inc.*, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009) (record showing plaintiff rented a hotel movie at a price corresponding to one of fifteen options was insufficiently specific to be PII under the VPPA).

Plaintiff fares no better in arguing that he sufficiently pled the disclosure of specific video materials because "every video of a recipe is linked to a specific recipe ID," Opp. 19, and the recipe ID is allegedly transmitted to Twilio when the user watches a recipe clip.[5] Plaintiff's

---

[5] Contrary to Plaintiff's implication, Opp. 19, neither the First Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485–86 (1st Cir. 2016), nor the court in *In re Vizio*, 238 F. Supp. 3d. at 1212, was asked to decide whether the media at issue constituted "specific video materials." In *Yershov*, neither party disputed "Gannett disclosed

allegation that the recipe ID is a proxy for the video watched is refuted by documents incorporated in the Complaint, which the Opposition conveniently ignores. Mot. 20. Either way, Plaintiff asks the Court to make the unsupported, illogical leap that if every video is linked to a recipe ID, the converse must also be true: *any* recipe ID must *specifically identify* a video. Plaintiff provides no basis for this assumption. *See FTC v. Amazon.com, Inc.*, 2015 WL 11256312, at *2–3 (W.D. Wash. Aug. 3, 2015) (disclosing names and content of complaints by users, some of whom had purchased videos, did not constitute disclosure of PII under the VPPA).

What's more, Plaintiff did not allege that the recipe ID is transmitted "because a user watched a video," Opp. 19, and he cannot amend his Complaint through his Opposition. *Velasquez*, 2018 WL 3912360, at *2. The Complaint alleges only that a private research company "analyzed the disclosures made from Allrecipes to third parties when watching a video showing meal preparation." Opp. 19 (citing Compl. ¶ 16). But alleging that a recipe ID is disclosed when watching a video is not the same as alleging a recipe ID is disclosed *only* when watching a specific video—it says nothing about what information is disclosed when viewing recipes without videos. Absent this allegation, Plaintiff has not sufficiently pleaded the disclosure of PII.

Plaintiff's argument that so-called PII was transmitted knowingly is similarly deficient. The Opposition offers an unsupported reading of the VPPA's knowledge element that would only require "consciousness of transmi[ssion] . . . ." Opp. 21 (quoting *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("*Hulu III*"). This interpretation ignores case law holding that a defendant's knowledge of disclosing PII to a third party is a necessary VPPA element. Mot. 21–22. Here, Plaintiff does not allege that Meredith knew the data it sent to Twilio was PII (it was not, *id.* at 17–21). Moreover, Plaintiff twists the definition of "knowingly" by ignoring relevant

[] the title of the viewed video," 820 F.3d at 485, and Plaintiff's quote to *In re Vizio*'s discussion on "viewing data points" constituting specific "content" pulls from a complaint allegation, not a legal holding, 238 F. Supp. 3d at 1212.

case law in favor of a new legal theory imported from an unrelated statute. Plaintiff contends that VPPA liability does not require the defendant to understand the "potential consequences" from the disclosure, Opp. 21, citing *Senne v. Vill. of Palatine, Ill.*, 695 F. 3d 597, 603 (7th Cir. 2012) (interpreting the Driver's Privacy Protection Act ("DPPA"), not the VPPA). Cases interpreting the *VPPA's* knowledge element clearly disagree. *See, e.g., Hulu III* at 1095 (N.D. Cal. 2015) ("It is not enough that a disclosure be merely voluntary in the minimal sense of the defendant's being aware of what he or she is doing; knowingly means consciousness of transmitting private information, not merely transmitting the code." (cleaned up)). Unsurprisingly, the sole support Plaintiff can muster for his watered-down knowledge argument is *Senne*, 695 F.3d at 603, which involved the DPPA, a statute with an entirely different structure and a *mens rea* standard of no relevance here.

**C. The Ordinary Course of Business Exception Applies**

Disputing the scope of the "ordinary course of business" exception, 18 U.S.C. §2710(b)(2)(E), Plaintiff opines that "this exception only applies when a video tape service provider discloses PII for *non-pecuniary* ends," and therefore precludes disclosures to third parties for marketing and analytics. Opp. 24. Plaintiff's own case law contradicts this argument. *Id.* at 23 (citing *Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (quoting S. Rep. No. 100-599 at 14 (1988)) ("order fulfillment" and "request processing" refer to use of "'computer services [] and similar companies for *marketing* to their customers'" (emphasis added)). And Plaintiff's reference to § 2710 (b)(2)(D)(ii) fails to explain why the use of the term "marketing" in a different statutory provision bears on the ordinary course of business exception, which lacks that term.[6]

[6] Indeed, "marketing" is ordinarily synonymous with business activities aimed at increasing revenue. *See* Merriam-Webster (last visited Sept. 30, 2022), https://www.merriam-webster.com/dictionary/marketing (defining "marketing" as "the process or technique of promoting, selling, and distributing a product or service" (definition 1(b))).

The Seventh Circuit in *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 624 (7th Cir. 2014), persuasively explains why the exception includes marketing activity. Contrary to Plaintiff's assertion, there is no basis to limit *Sterk*'s holding its facts; the decision's language and rationale are broad and clearly apply to the conduct alleged here. *Id.* at 625. Plaintiff has not alleged that Allrecipes uses Twilio to do anything more than a brick-and-mortar video store would do. Mot. 24.

### D. Plaintiff Fails to Allege a Violation of the MVPA

Plaintiff attempts to salvage his MVPA claim by redefining common words in the statute, which prohibits a business "engaged in . . . leasing or renting videos" from disclosing information on "the title or category of any video leased or rented by a borrower . . . ." Mass. Gen. Laws ch. 93 § 106(2). Plaintiff illogically contends that if the word "rent" in the MVPA "implies an exchange of money, then lease must contain no such implication." Opp. 25. This unsupported argument defies common sense and established canons of statutory interpretation. *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 45 (1st Cir. 2020) (recognizing "the timehonored principle that clear statutory language should generally control . . ."). Plaintiff gives no authority for reading the word "lease" differently than its plain meaning. Frequently cited dictionaries affirm that a lease requires an exchange of value, usually monetary. Mot. 24–25; *Lease*, Merriam-Webster.com (last visited Sept. 30, 2022), https://www.merriam-webster.com/dictionary/lease ("lease[:] a contract by which one conveys [] equipment [] for a specified term and for a specified rent"). Under any reasonable reading of the MVPA, Plaintiff has not alleged that he "leased" recipe clips, since Allrecipes is free. Compl. ¶¶ 2 n.1, 68–72.

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint in its entirety.

Dated: September 30, 2022

Respectfully submitted,

Meredith Corporation

By Its Attorney,

/s/ Tiana Demas
Tiana Demas (*pro hac vice*)
COOLEY LLP
55 Hudson Yards, 43rd Floor
New York, NY 10001
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275
tdemas@cooley.com

Adam Gershenson, BBO No. 671296
COOLEY LLP
500 Boylston Street
14th Floor
Boston, MA 02116-3736
Telephone: +1 617 937 2300
Facsimile: +1 617 937 2400
agershenson@cooley.com

David E. Mills (*pro hac vice*)
Alexander J. Kasner (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899
dmills@cooley.com
akasner@cooley.com

Kyle C. Wong (*pro hac vice*)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693-2029
Facsimile: +1 415 693-2222
kwong@cooley.com

*Counsel for Defendant Meredith Corporation*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this 30th day of September, 2022 the foregoing, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*/s/ Tiana Demas*